UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHRISTOPHER M. H., SR.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-19 |
| | ) |
| MARTIN O'MALLEY[2], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Christopher H., on January 17, 2023. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Christopher H., filed an application for disability and disability insurance benefits on November 16, 2020, alleging a disability onset date of December 22, 2017. (Tr. 11). The Disability Determination Bureau denied Christopher H.'s application initially on April 19, 2021, and again upon reconsideration on July 31, 2021. (Tr. 81-85; 92-96). Christopher H. subsequently filed a timely request for a hearing on August 23, 2021. (Tr. 41). A hearing was held via telephone on January 11, 2022, before Administrative Law Judge (ALJ) Marc Jones. (Tr. 31-61). Vocational Expert (VE) Mitchell Norman testified at the hearing. (Tr. 55-60). Following the hearing, the ALJ issued an unfavorable decision on March 16, 2022. (Tr. 8-24).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Christopher H. had a continuous 12-month period in which he did not engage in substantial gainful activity. (Tr. 13).

At step two, the ALJ determined that Christopher H. had the following severe impairments: degenerative disc disease of the lumbar spine, status-post fusion and revision; obesity; and hernias. (Tr.13).

At step three, the ALJ concluded that Christopher H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14). The ALJ found that no medical evidence reflected diagnostic findings that satisfied any listed impairment. (Tr. 14). The ALJ considered whether the severity of Christopher H.'s impairments met or medically equaled the criteria of Listings 1.15 (disorders of the skeletal spine) and concluded that they did not. (Tr. 14).

After consideration of the entire record, the ALJ then assessed Christopher H.'s residual functional capacity (RFC) as follows:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can occasionally climb ramps and stairs; and occasionally stoop, kneel, and crouch, but not frequently bend or twist. The claimant can never climb ladders, ropes or scaffolds; never crawl; never work at unprotected heights; and never balance, as the term is defined in the SCO. The claimant must avoid concentrated exposure to extreme cold, humidity, and wetness. The claimant must use a medically necessary cane at all times while walking. Every 30 minutes, the claimant must be allowed to shift positions or alternate between sitting and standing for 1-2 minutes at a time while remaining on task.

(Tr. 14). The ALJ found that Christopher H.'s medically determinable impairment could reasonably be expected to cause some of the alleged symptoms. (Tr. 17). That said, he found that Christopher H.'s statements related to the intensity, persistence, and limiting effects of the symptoms conflicted with the medical evidence and other evidence in the record. (Tr. 17).

At step four, the ALJ found that Christopher H. could not perform his past relevant work. (Tr. 19). However, the ALJ found jobs that existed in significant numbers in the national economy that Christopher H. could perform, such as an order clerk, a lens inserter, and a document preparer. (Tr. 20). Consequently, the ALJ found that Christopher H. had not been under a disability, as defined in the Social Security Act, from December 22, 2017, through the date of the decision. (Tr. 20).

## *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no

3

errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). Yet "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel. Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920.** The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b).** If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. Yet if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e),**

4

**416.920(e).** That said, if the claimant shows that his impairment is so severe that he cannot engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, considering his age, education, job experience, and functional capacity to work, is able to perform other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion about job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Christopher H. has requested that the court remand this matter for additional proceedings. In his appeal, Christopher H. argues that the ALJ's analysis of his RFC is not supported by substantial evidence. Christopher H. also challenges the ALJ's step five conclusion that there are significant jobs in the national economy that he could perform.

A. The ALJ's RFC Assessment

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." **SSR 96-8p**. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the most someone "can do despite their mental and physical limitations." **20 C.F.R. § 404.1545(a)(1)** and **§ 416.945(a)(1)**; **SSR 96-8p(5)**. The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." **SSR 96-8p**.

5

When determining a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* **20 C.F.R. § 416.929(a)**. The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* **20 C.F.R. § 404.1529(a)**.

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence ..." **20 C.F.R. § 404.1529(c)(4)**. Accordingly, a claimant's alleged symptoms are determined to diminish his capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." **20 C.F.R. § 404.1529(c)(4)**.

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." **SSR 96-8p**, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." ***Lothridge v. Saul***, 984 F.3d 1227, 1233 (7th Cir. 2021).

According to Christopher H., the ALJ failed to adequately consider his medical history in its totality, resulting in a flawed RFC finding. The court disagrees. The ALJ detailed Christopher H.'s treatment history and physical symptoms throughout his RFC finding. (Tr. 14-19). True, Christopher H. points to a sentence in the ALJ's decision where he stated, incorrectly, that Christopher H. did not have a "documented need for an assistive device with an inability to use one or both upper extremities." (Tr. 14). Yet in the next sentence the ALJ rectifies this statement by noting that Christopher H. "used a walker for a very limited period of time before he switched to a cane, *which is accounted for* in the residual functional capacity." (Tr. 14) (emphasis added).

The ALJ considered a multitude of medical records from Christopher H.'s treating physicians including those from Mohammad Shukairy, M.D., Nikola Nenadovich, M.D., Joseph Venditti, M.D., Satish Dasari, M.D., Kathryn Trojan, FNP, O. Villareal, M.D., and Venkat Kavuri, M.D. (Tr. 15-17). The ALJ also factored in Christopher H.'s subjective symptoms, including his statements that he could work for only 30-45 minutes before needing to rest and that he required naps throughout the day. (Tr. 17). However, the ALJ noted that no doctor made such a recommendation and that the "consultive examiner found that he could sit, stand, and walk with no issues." (Tr. 17-18).

Christopher H. reiterates his medical history throughout his brief but fails to identify how the ALJ erred in his analysis of the evidence. The ALJ sufficiently addressed Christopher H.'s extensive medical history, along with his alleged symptoms, and built a logical bridge to support his RFC finding. It is evident that Christopher H. does not agree with the ALJ's interpretation of the medical evidence. Nevertheless, the court may not reweigh evidence to supplant its own conclusion in lieu of the ALJ's when the opinion is supported by adequate rationale. **Skinner v. Astrue**, 478 F.3d 836, 841 (7th Cir. 2007); *see also* **Elder v. Astrue**, 529 F.3d 408, 412 (7th Cir.

2008).

**B. The ALJ's Step Five Conclusion**

Christopher H. also claims that the ALJ's step five conclusion is not supported by substantial evidence. Christopher H. argues that the vocational expert did not elaborate on his methodology as to how he calculated the number of jobs available for an individual with his RFC, and therefore lacked substantial evidence to support the step five decision.

A plaintiff seeking disability insurance benefits bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. ***Briscoe ex rel. Taylor v. Barnhart***, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows him to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry his step-five burden through vocational expert testimony, as long as such testimony is reliable. *See* ***Chavez v. Berryhill***, 895 F.3d 962, 968 (7th Cir. 2018) ("[T]he substantial evidence standard requires the ALJ to ensure that the approximation [by the VE] is the product of a reliable method."); ***Liskowitz v. Astrue***, 559 F.3d 736, 743 (7th Cir. 2009). "Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." ***Donahue v. Barnhart***, 279 F.3d 441, 446 (7th Cir. 2002) (citations omitted). Yet "[e]stablishing the reliability of a job-number estimate does not require meeting an overly exacting standard." ***Chavez***, 895 F.3d at 968. "A VE's estimate will be just that—an estimate." *Id.*

The Dictionary of Occupational Titles (DOT) does not address the subject of sit/stand options. SSR 83–12 addresses the "special situation" when "the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light

work except that the person must alternate periods of sitting and standing." **SSR 83–12**, 1983 WL 31253, at *4 (Jan. 1, 1983). It provides that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." *Id.: see also* **20 C.F.R. § 404.166(e)** ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert.").

In this case, the ALJ's hypothetical questions to the VE included all of the limitations in his RFC finding. *See* **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question [he] poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). The ALJ's hypotheticals posed to the VE included that of an individual who must always use a medically necessary cane while walking and needs to shift positions every 30 or 60 minutes or alternate between sitting and standing. (Tr. 56-58). In response, the VE identified many jobs that someone with Christopher H.'s age, education, work experience, and RFC could perform with such limitations. The VE specifically testified that these were jobs that could be performed with a sit/stand option.

Christopher H. argues that the VE's testimony did not provide sufficient methodology into how he calculated the number of available jobs in the national economy. However, Christopher H. cites no cases to support his contention that the ALJ should obtain additional evidence beyond that of the VE. **Schmidt v. Astrue**, 496 F.3d 833, 846 (7th Cir. 2007) (Where the ALJ's step five conclusion was supported by substantial evidence by asking "appropriate hypothetical questions to the vocational expert based on his determination of [the plaintiff]'s

9

residual functional capacity, and the vocational expert testified that [the plaintiff] could perform a significant number of jobs."). Additionally, "the threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla." ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotation marks omitted). Christopher H. did not object to the sufficiency of the VE's qualifications, knowledge, experience, or available job estimates at the hearing. Thus, substantial evidence supports the ALJ's step five conclusion.

### *Conclusion*

The court finds that the decision of the ALJ is supported by substantial evidence and that the decision, adopted by the Commissioner, was reasonable in light of the testimony and evidence. Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 26th day of February, 2024.

/s/ Andrew P. Rodovich
United States Magistrate Judge